**In re AIR CRASH DISASTER AT STAPLETON INTERNATIONAL AIRPORT, DENVER, COLORADO, ON NOVEMBER 15, 1987.**

**MDL No. 751.**

United States District Court,
D. Colorado.

June 7, 1989.

Opinion on Amended Judgment and Prejudgment Interest June 7, 1989.

Order on Motions to Reconsider
July 18, 1989.

ORDER MDL 751–39

MEMORANDUM OPINION
AND
ORDER ON POST–TRIAL
MOTIONS FOR SUMMARY JUDGMENT
AND DISMISSAL

SHERMAN G. FINESILVER, Chief Judge.

This multidistrict litigation involves claims for personal injury and wrongful death arising out of the crash of a commercial airliner. Plaintiffs are passengers,

members of the crew, and surviving relatives of the victims of the crash. Defendants are Continental Airlines, Inc., and Texas Air Corporation. In January of 1989, consolidated claims were presented to a jury through an exemplar trial. The exemplar trial verdict resolves certain claims in favor of plaintiffs and others in favor of defendants. The issue before the court is the effect of that verdict on all multidistrict cases pending in this court.

In this memorandum opinion and order, we hold: (1) cases consolidated for resolution through the exemplar trial, by order of the court or confession of the parties, are bound by the result of the exemplar trial, (2) all claims and defenses remain at issue in passenger cases filed or transferred after consolidation under applicable principles of collateral estoppel, and (3) voluntary dismissal of cases brought by crew-member plaintiffs will not result in legal prejudice to defendants.

## I. INTRODUCTION.

The matter comes before the court on several motions of defendants.[1] Two crew-member plaintiffs move for voluntary dismissal. Pending motions fall into two categories: (1) whether exemplar trial verdicts apply in all cases, and (2) whether any plaintiff may recover on claims under the Texas Deceptive Trade Practices Act. Defendants seek to bind all plaintiffs to the verdicts returned in the exemplar trial. The Plaintiffs Steering Committee contends that verdicts decided in favor of de-

fendants are binding only against exemplar trial plaintiffs Karen Svea Johnson and her husband Robert Cooke, Jr. Compensatory damage claims of these plaintiffs were selected to serve as a backdrop for resolution of common issues of liability in the exemplar trial.[2]

By order of November 29, 1988, all cases filed in this District or transferred here by order of the Judicial Panel on Multidistrict Litigation were formally transferred to this court for trial pursuant to 28 U.S.C. § 1404. Counsel for all parties agreed that an exemplar trial would resolve specific issues common to all cases pending at that time: (1) liability for negligence, (2) liability for unlimited compensatory damages under Idaho law, (3) liability for punitive damages, and (4) potential liability for violations of the Texas Deceptive Trade Practices Act. This procedure was approved and implemented by orders of the court.

Claims of Karen Svea Johnson, a passenger injured in the crash, and Robert Cooke, Jr., her husband, were selected for trial as the exemplar case by their counsel and the Plaintiffs Steering Committee. The *Johnson* case was filed in Idaho, transferred to this district for pretrial proceedings by order of the Judicial Panel, and subsequently transferred to the court for trial by our order of November 29, 1988. In addition to common liability issues, issues specific to these plaintiffs were also presented during the exemplar trial: (1) compensatory damages on claims for personal injury and loss

---

1. On April 6, 1989 defendants filed four motions in response to a procedural order entered March 23, 1989: (1) motion for summary judgment on all claims for punitive damages and against Texas Air Corporation, (2) motion for summary judgment on all Texas Deceptive Trade Practices Act claims, (3) motion to dismiss Texas Deceptive Trade Practices Act claims, and (4) motion for summary judgment on claims of crew-member plaintiffs. The Plaintiffs Steering Committee filed responses to defendants' motions on April 13, 1989. Pursuant to prior orders of the court, the Steering Committee represents all plaintiffs. In earlier pleadings filed in connection with proposed Final Pretrial Orders, individual plaintiffs filed separate briefs on the effect of the exemplar trial verdicts. No plaintiff filed an exception to the position of the Steering Committee in regard to the instant motions.

2. The Plaintiffs Steering Committee is a group of attorneys appointed by the court for the purpose of conducting consolidated discovery and litigating issues common to all claimants. Collectively, the attorneys serving on the Steering Committee represent a majority of the plaintiffs in this multidistrict litigation. Individual plaintiffs and counsel reside in Colorado, Idaho, New Jersey and Arizona.

By "exemplar" case, we mean the claims of a particular plaintiff selected for full trial of all issues, including compensatory damages, to serve as a back-drop for resolution of common claims including punitive damages, consolidated for trial before one jury to serve goals of fairness, consistency and efficiency. *See In re Air Crash Disaster at Stapleton Int'l Airport,* Order MDL 751-17, 720 F.Supp. 1455, 1458-59 (D.Colo. Nov. 29, 1988).

of consortium, (2) causation under the Texas Deceptive Trade Practices Act, and (3) damages under the Deceptive Trade Practices Act. The over-all amount of punitive damages to be awarded was severed and reserved for subsequent determination, if necessary.

At the conclusion of a three-week trial, the jury found (1) Continental Airlines is liable in tort for injuries incurred in the crash of Flight 1713, (2) defendant's conduct was either willful or reckless, precluding the court from limiting non-economic damages under Idaho law, (3) defendant was not grossly negligent and should not be held liable for punitive damages under Texas law, and (4) defendant's trade practices were deceptive, as defined by Texas law, but these practices did not cause injury to plaintiff Karen Johnson.[3] By order of March 10, 1989, the court denied plaintiffs' motions for judgment notwithstanding the verdict on claims for punitive damages or new trial on all claims. *See In re Air Crash Disaster at Stapleton Int'l Airport*, Order MDL 751–33, 720 F.Supp. 1467 (D.Colo. March 10, 1989).

In Order MDL 751–33, the court overruled plaintiffs' objections to procedures applied to try the consolidated claims for liability and punitive damages. In this order, we expressly extend that holding to all cases consolidated for trial and determine the status of claims pending in cases transferred to or filed in this district subsequent to the order of consolidation.

The exemplar trial proceeded as a consolidated trial on specific issues pursuant to court order of November 29, 1988. The exemplar trial established (1) defendant Continental Airlines, Inc. is liable in tort for 100% of the damages to be proven by consolidated plaintiffs, (2) consolidated Idaho plaintiffs are not subject to the non-economic damage limitation of Idaho Code § 6–1603, (3) Continental is not liable for punitive damages in the consolidated cases,

(4) Texas Air Corporation is not liable to consolidated plaintiffs on a theory of corporate alter-ego, and (5) Continental's 1987 advertising campaign amounted to a deceptive trade practice.

In adherence to the trial plan adopted for this litigation, plaintiffs and defendants in all cases pending in this district prior to November 29, 1988 are bound to the verdicts returned in the exemplar trial; compensatory damage awards and alternative liability for deceptive trade practices remain at issue in these cases.

As to cases filed in or transferred to this court subsequent to November 29, 1988, the cases were not consolidated. The status of claims pending in these cases turns on principles of collateral estoppel. Equity does not allow these claimants to take only plaintiffs' verdicts from the exemplar trial without being bound by verdicts in favor of defendants. All claims and defenses remain at issue in eight of the ten later filed cases. In two cases, complaints filed prior to trial bind plaintiffs to the verdicts.

Crew member plaintiffs are entitled to voluntary dismissal of their federal cases. Defendants will suffer no legal prejudice in being compelled to litigate issues of collateral estoppel in Texas state court.

## II. CONSOLIDATION.

Motions before the court require that we distinguish between cases bound by the verdicts in the exemplar trial as a matter of law, and cases in which the effect of the exemplar trial is determined by principles of collateral estoppel. In this section of the opinion, we find that cases pending in this court on November 29, 1988 are bound by the verdicts of the exemplar trial.

In Order MDL 751–17, all pending cases were formally transferred to the District of Colorado pursuant to 28 U.S.C. § 1404.[4] Pending cases were consolidated for trial on common law tort liability, punitive damages liability, and common issues under the

---

**3.** The jury initially considered defendant's conduct under the law of Idaho in regard to that state's limitation on the size of a non-economic damage award. The jury also considered defendant's conduct under Texas law to determine if punitive damages should be assessed.

**4.** A catalogue of the substantive orders entered in this litigation is included as an appendix to this memorandum.

Texas Deceptive Trade Practices Act, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure. Defendants' motion for summary judgment on claims for punitive damages and against Texas Air Corporation seeks to extend the effect of that order to all cases arising out of the crash of Flight 1713.[5] Defendants contend that the record at trial, including the testimony of two plaintiffs whose claims were not pending in this court upon entry of Order MDL 751–17, indicates that the parties contemplated joint trial on all claims which might arise out of the crash.[6]

■■■ In multidistrict litigation, fairness and efficiency do not warrant entry of consolidation orders in cases that have not been transferred or filed. *See Pan American World Airways, Inc. v. United States District Court,* 523 F.2d 1073, 1077, 1080 (9th Cir.1975). Basic principles of due process prevent the court from entering orders which would have the effect of consolidating claims of plaintiffs who are not yet parties before that court. *Id.,* at 1077, 1080; *In re Penn Central Commercial Paper Litigation,* 62 F.R.D. 341, 344 (S.D. N.Y.1974), *aff'd* 515 F.2d 505 (2d Cir.1975); *Ore & Chemical Corp. v. Stinnes Interoil,*

*Inc.,* 606 F.Supp. 1510, 1514 (S.D.N.Y. 1985). A multidistrict case is not pending in a transferee court for purposes of consolidation until: (1) the Judicial Panel on Multidistrict Litigation transfers the case for consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407, and (2) the transferee court subsequently transfers the case to its own District for all purposes pursuant to 28 U.S.C. § 1404(a). *See* Order MDL 751–17, at 1458 (citing cases); Weigel, *The Judicial Panel on Multidistrict Litigation, Transferor Courts and Transferee Courts,* 78 F.R.D. 575, 581–82 (1978).

Twenty-eight (28) cases are pending in this litigation.[7] Sixteen (16) cases were formally transferred for consolidated trial by Order MDL 751–17 on November 29, 1988.[8] Whether entry of judgment is appropriate in these cases requires consideration of plaintiffs' objections to the procedures of the exemplar trial. Five (5) passenger cases and two (2) crew-member cases were filed in or transferred to the District of Colorado after November 29, 1988 and not consolidated for trial by subsequent order.[9] An additional five (5) cases filed in the District of Idaho were recently transferred to this court by order

---

**5.** Defendants contend that the goal of "just and efficient conduct of this litigation" embodied in the transfer orders of the Judicial Panel on Multidistrict Litigation and this courts formal order of transfer and consolidation, Order MDL 751–17, provide for entry of judgment throughout the "totality of this litigation." *In re Air Crash Disaster at Stapleton Int'l Airport,* Order MDL 751–17, 720 F.Supp. 1455, 1460 (D.Colo. Nov. 29, 1988).

**6.** Mr. Richard Case, a former pilot, testified to his observations of the deicing procedures, the take-off roll, the crash itself, and to his experiences and heroic efforts once the aircraft came to rest and rescue efforts began. Mrs. Kelly Englehart, a Continental Flight Attendant, offered similar testimony.

**7.** Efforts of counsel and parties resulted in the settlement of 19 cases arising out of the crash of Flight 1713. Several of these cases were settled as a result of settlement conferences before the court. *See* Order MDL 751–12, 720 F.Supp. 1433 (D.Colo. Oct. 14, 1988) (discussing court's authority to order parties to attend settlement conferences).

**8.** By plaintiff, those cases are: *Selleh,* Case No. 88–F–346; *Smoot,* Case No. 88–F–661; *Cooper,*

Case No. 88–F–663; *Johnson,* 88–F–664; *Weltz,* Case No. 88–F–665; *C. Davis,* 88–F–667; *Tlucek,* Case No. 88–F–668; *W. Davis,* Case No. 88–F–670; *Daniel,* Case No. 88–F–671; *Link,* Case No. 88–F–787; *Halford,* Case No. 88–F–831; *Hoagland,* Case No. 88–F–832; *Stewart,* Case No. 88–F–898; *Smith/Owens,* Case No. 88–F–990; *Spicer,* Case No. 88–F–991; *Self,* Case No. 88–F–1358.

**9.** By plaintiff, passenger cases are: *Harkenrider,* Case No. 88–F–1994; *Vermuelen,* Case No. 88–F–1993; *Hepp,* Case No. 89–F–135; *Watson,* Case No. 89–F–136; *Case,* Case No. 89–F–137. Crew cases are: *Metts,* Case No. 88–F–1991; *Englehart,* Case No. 88–F–1994.

On January 6, 1989, defendants filed a motion to clarify transfer and consolidation of these cases. On January 12, 1989, the morning of trial, the court stated that the purpose of the exemplar trial was to establish all common issues of liability. The court did not formally consolidate those cases for trial. Such an order could not have entered in *Hepp, Watson,* or *Case,* over which this court had no jurisdiction at that time. The status of these cases is addressed below.

of the Judicial Panel on Multidistrict Litigation.[10] Whether entry of judgment is appropriate in these cases requires consideration of the principles of collateral estoppel.

### III. CASES CONSOLIDATED FOR TRIAL.

#### A. *Entry of Judgment.*

■ Plaintiffs object to entry of judgment against plaintiffs other than Karen Johnson and Robert Cooke, Jr., whose compensatory damage claims were presented at the exemplar trial, on the grounds that procedures employed at the exemplar trial combined to deny other plaintiffs their rights to due process and fair trial. We have considered and reject plaintiffs' characterization of *Johnson* as a "test case" to which they may only be bound by express consent. *See Katz v. Carte Blanche Corp.*, 496 F.2d 747, 758-62 (3d Cir.), *cert. denied*, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974).[11] In this section, we overrule plaintiffs' objections to the procedures employed at trial and find that plaintiffs were provided a full and fair opportunity to litigate their claims for punitive damages and against Texas Air Corporation pursuant to the trial plan. Courts may order consolidation of cases without consent and over the objections of parties. *Mutual Life Ins. Co. v. Hillmon*, 145 U.S. 285, 293, 12 S.Ct. 909, 911, 36 L.Ed. 706 (1892); *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1013 (5th Cir.1977). Because plaintiffs were afforded a full and fair opportunity to litigate their claims, the issue of express consent is irrelevant.[12]

■ Rule 42(a) of the Federal Rules of Civil Procedure gives courts broad authority to "make such orders concerning the proceedings therein as may tend to avoid unnecessary cost or delay." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 773-74 (9th Cir.1977); *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1013-17 (5th Cir.1977); *MacAlister v. Guterma*, 263 F.2d 65, 68-69 (2d Cir.1958). The standard of review applied to determine whether trial procedures applied in complex litigation have combined to deny a party's rights to due process and fair trial is one of actual prejudice to the substantial rights of that party. *See In re Bendectin Litigation*, 857 F.2d 290 (6th Cir.1988), *cert. denied sub nom.*, — U.S. —, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989); *In re*

**10.** By plaintiff and case number these cases are: *L. Kemper*, Case No. 89-F-969; *J. Kemper*, Case No. 89-F-970; *Wadsworth*, Case No. 89-F-971; *Noe*, Case No. 89-F-972; *Davis*, Case No. 89-F-973.

**11.** Plaintiffs' contentions focus on the two non-traditional trial plans most frequently applied to mass tort litigation. *See generally* Manual for Complex Litigation, Second § 33.26 (1985). The "test" or "bellwether" case is applied when courts find the differences between the claims or defenses, or other procedural difficulties, prevent the court from formally consolidating cases for trial. *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 758-62 (3d Cir.), *cert. denied*, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974) ("test case" an available alternative effecting balance of factors considered in certification of a class action); *In re Ampicillin Antitrust Litigation*, 88 F.R.D. 174, 178 (D.D.C.1980) (antitrust claims with common elements remain different enough to prevent consolidation, plan adopted to proceed with basic cases first). In mass tort cases, courts frequently invoke the discretion embodied in Rule 42 to effectuate joint trial on common claims. *See* Order MDL 751-17, 720 F.Supp. 1455, 1458-59 (D.Colo. Nov. 29, 1988) (citing cases); *Easton v. City of Boulder*, 776

F.2d 1441, 1446 (10th Cir.1985) (courts enjoy broad discretion to sever liability from damages); *see also Hines v. Joy Mfg. Co.*, 850 F.2d 1146, 1152-53 (6th Cir.1988) (severance of products liability claims not abuse of discretion); *Arnold v. Eastern Air Lines, Inc.*, 681 F.2d 186, 192 (4th Cir.1982) (severance of liability in air crash cases not an abuse of discretion), *cert. denied sub nom.*, 460 U.S. 1102, 103 S.Ct. 1801, 76 L.Ed.2d 366 (1983). The joint trial plan was selected in this litigation to provide certainty to the disposition of claims in each case. Plaintiffs do not contend that the initial order of consolidation and bifurcation was inappropriate in the circumstances of this litigation.

**12.** Plaintiffs' objections to the trial plan and procedures were first raised post-trial. Over a four month period, the general order of transfer and bifurcation included in the Pretrial Order developed into a stipulated trial plan. *See* Order MDL 751-33, 720 F.Supp. 1467, 1482-83 (D.Colo. Mar. 10, 1989) (discussing development of stipulated trial plan); Order MDL 751-17, 720 F.Supp. 1455 (D.Colo. Nov. 29, 1988). No plaintiff formalized the objections reserved in their Proposed Pretrial Order. Viewed in context, it was indeed reasonable for defendants and the court to proceed on the understanding that the trial plan met with no objection.

*Beverly Hills Supper Club Fire Litigation,* 695 F.2d 207, 217 (6th Cir.), *cert. denied sub nom.,* 461 U.S. 929, 103 S.Ct. 2090, 77 L.Ed.2d 300 (1982); *see also MCI Communications v. American Telephone & Telegraph,* 708 F.2d 1081, 1173 (7th Cir.), *cert. denied,* 464 U.S. 891, 104 S.Ct. 234, 78 L.Ed.2d 226 (1983).[13] Similarly, the standard applied to bifurcated proceedings is whether the party bearing the burden of proof was unfairly prejudiced by the procedures employed. *United States Gypsum Co. v. Schiavo Bros, Inc.,* 668 F.2d 172, 181 (3d Cir.1981), *cert. denied,* 456 U.S. 961, 102 S.Ct. 2038, 72 L.Ed.2d 485 (1982).

The exemplar trial plan provided for full trial in a select personal injury case to allow plaintiffs to demonstrate the extensive impact and injury resulting from the crash of a commercial airliner. *See* Order MDL 751–17, at 1460. Specific evidence of the injuries of plaintiffs other than Karen Johnson and Robert Cooke, Jr. was precluded under the bifurcation order to serve the efficiency goals of the trial plan. *See* Order MDL 751–17, at 1458–59. Nonetheless, several witnesses testified to the breadth of the catastrophe.

Appellate courts have established a standard of actual prejudice applicable to trial plans in mass tort litigation:

> There is a danger that bifurcation may deprive plaintiffs of their legitimate right to place before the jury the circumstances and atmosphere of the entire cause of action which they have brought into court, replacing it with a sterile or laboratory atmosphere in which causation is parted from the reality of injury.

*In re Beverly Hills Supper Club Fire Litigation,* 695 F.2d 207, 217 (6th Cir.1982) (no

abuse of discretion where "proofs themselves, although limited, were nonetheless fully adequate to apprise the jury of the general circumstances of the tragedy and the environment in which the fire arose."), *cert. denied sub nom.,* 461 U.S. 929, 103 S.Ct. 2090, 77 L.Ed.2d 300 (1982); *see also In re Bendectin Litigation,* 857 F.2d 290 (6th Cir.1988) (reaffirming *Beverly Hills* standard and upholding joint trial on some 1100 product liability claims for birth defects where judgment for defendants was entered after trial on causation alone; deformed plaintiffs properly precluded from testifying or even being present in court), *cert. denied sub nom.,* —— U.S. ——, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989).

Plaintiffs' theory of prejudice focuses on preclusion of testimony going to the extent of other plaintiffs' injuries and the failure of the court to specifically instruct the jury on (1) the existence and interests of all plaintiffs, (2) the nature of their interests and losses, and (3) the potential effect of the verdict on all cases. Plaintiffs' theory of prejudice is that absent specific evidence of each plaintiff's injuries, the jury lacks information essential to a fair determination of joint claims for punitive damages unless clearly instructed that their verdict will be dispositive of the rights of several plaintiffs.

■ The mass tort standard of actual prejudice does not require court presiding over a joint liability trial to instruct the jury on the procedural ramifications of their verdicts. *See* Order MDL 751–33, at 1479 (procedural details would add unnecessary confusion to jury instructions). Plaintiffs again cite no authority in support of the proposition.[14]

---

**13.** In such cases, the "proper inquiry is whether it affirmatively appears from the record that some prejudice to the substantial rights of a party has resulted.... 'It is axiomatic that litigation parties are entitled only to a fair trial, not to a perfect one.' ... Considering the complexities of this case and the near impossibility of coping with them adequately with traditional procedures, A, T & T received a fair trial." (citations omitted).

**14.** In Order MDL 751–33, we discussed the insufficiency of plaintiffs' post-trial objections to the jury charge. At the close of juror voir dire, conducted by the court at the beginning of trial,

the jury was informed that the case was being tried as an exemplar case by the Plaintiffs Steering Committee and that their decision would effect certain claims of other passengers. The comments were made at the request of Plaintiffs' Lead Trial Counsel to free him of the burden of explaining the number of plaintiffs counsel who would appear at trial. Plaintiffs' objections to the court's instruction on the nature of the case and claims failed to meet the standard of specificity required by Rule 51 of the Federal Rules of Civil Procedure. The record is clear that plaintiffs' current objection to the instruction was not made known to the

■ In all respects, the record indicates that the exemplar trial jury was well informed of the circumstances of the tragic crash of Flight 1713 and the environment in which plaintiffs' injuries arose. Plaintiffs have presented no evidence or theory to alter our conclusion in Order MDL 751–33 that (1) the jury was well informed of the existence of the claims before them by the court, counsel, and testifying plaintiffs, (2) evidence of the scope and horror of the disaster, the rescue effort, and the weather conditions hampering the rescue effort was before the jury, (3) the jury was instructed as to the high duty of care imposed on common carriers, and (4) neither the trial plan nor the court's implementation of the trial plan precluded the presentation of evidence of defendant's conduct in the context of its responsibility to passengers and claimants. *See* Order MDL 751–33, at 1478–83. Clearly, trial proceeded in a manner far from a sterile presentation of conflicting legal and aeronautical theories of causation and responsibility.

During jury deliberation, the court proposed a stipulation on the res judicata effect of the exemplar trial verdict. Plaintiffs' refusal to execute the stipulation does not undermine the effect of the jury verdict in the consolidated cases. The sole purpose of the stipulation was to extend the effect of the consolidation order to cases filed after November 29, 1988 by allowing parties to "opt in" to the joint trial.[15] *See In re Bendectin Litigation,* 857 F.2d 290 (6th Cir.1988) (affirming application of pretrial "opt in" procedure described by trial court at 624 F.Supp. 1212, 1216), *cert. denied sub nom.,* —— U.S. ——, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989). By refusing to execute the stipulation, plaintiffs merely preserved their right to litigate the res judicata issues applicable to cases not formally consolidated for trial. *See* Wright, Miller & Cooper, Federal Practice and Procedure, Jurisdiction § 4453.

Plaintiffs have failed to demonstrate that actual prejudice resulted from the procedures applied pursuant to the trial plan. *See MCI Communications v. American Telephone & Telegraph,* 708 F.2d 1081, 1173 (7th Cir.1983), *cert. denied,* 464 U.S. 891, 104 S.Ct. 234, 78 L.Ed.2d 226 (1983). The horror of the crash, tragic human consequences, deaths and injuries suffered by passengers and crew, and distress of family members was vividly described by one witness after another. Testimony and photographic exhibits displayed through much of the proceeding vividly depicted the aftermath. The atmosphere of tragedy permeated the courtroom virtually every day for three weeks. It is inconceivable that the jury disregarded substantial evidence of the scope and devastating effect of the crash in determining defendant's culpability. Plaintiffs' objections to the entry of judgment on the jury's verdict are overruled.[16]

■ When a complaint states several claims for relief, Rule 54(b) of the Federal Rules of Civil Procedure provides for the entry of judgment on a portion of those claims "only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Rule 58 provides that the court shall enter judgment upon return of a special verdict on claims or of a general verdict accompanied by special interrogatories. Plaintiffs' unresolved claims for compensatory damages are not contingent on disposition of claims for punitive damages or intercorporate liability. There is no just reason to delay entry of judgment for defendants on those claims. Defendants' motion for entry of judgment against plain-

court until the jury began its deliberation. *See* Order MDL 751–33, at 1478.

**15.** The proposed stipulation stated: "The parties stipulate that the result of this trial will be res judicata as to all parties in all multi-district cases not resolved as of this date with respect to the following verdicts...." Counsel never requested that a record be made on discussions of the matter.

**16.** Plaintiffs do not contest our earlier finding that they were provided a full and fair opportunity to develop their theory of parent-subsidiary liability against defendant Texas Air Corporation. *See* Order MDL 751–33, 720 F.Supp. 1467, 1483–84 (D.Colo. Mar. 10, 1989); *see also Straub v. Mountain Trails Resort, Inc.,* 770 P.2d 1321, 1323–24 (Colo.App.1988) (equitable corporate alter ego issue a matter for the court, no right to jury trial).

tiffs on claims for punitive damages and against Texas Air Corporation is GRANTED IN PART. As to cases consolidated pursuant to Order MDL 751–17, judgment shall enter pursuant to this order.

### B. *Status of Consolidated Deceptive Trade Practices Claims.*

Pursuant to Order MDL 751–17 and subsequent bench rulings of the court, common issues of liability on plaintiffs' consolidated claims for negligence and violations of the Texas Deceptive Trade Practices Act were tried to the jury in the exemplar case. On post-trial motions of plaintiffs, the verdicts were affirmed in Order MDL 751–33. As we found above, parties to the actions consolidated for trial on common issues are bound to those verdicts.

Defendant Continental has placed the status of consolidated claims under the Texas Deceptive Trade Practices Act at issue through motions for summary judgment or dismissal of claims of these and all other plaintiffs. In the following discussion, we reject defendants' contention that these claims should no longer be at issue in this litigation.

### 1. *Defendants' Motion for Partial Summary Judgment.*

Under the Texas Deceptive Trade Practices Act ("DTPA"), a Plaintiff may recover damages for personal injury upon proof by a preponderance of the evidence that: (1) defendant's conduct amounted to a deceptive trade practice as defined by the statute, and (2) defendant's conduct was a "producing cause" of the injuries alleged. *See Pope v. Rollins Protective Services Co.,* 703 F.2d 197, 201–06 (5th Cir.1983); Tex. Bus. & Comm.Code § 17.41, *et seq.,* § 17.50; Jury Instruction No. 38. A personal injury plaintiff may pursue alternate theories of liability under the statute but is required to elect recovery under the statute or common law tort after entry of the verdict but prior to judgment. *Butler v. Joseph's Wine Shop, Inc.,* 633 S.W.2d 926, 933 (Tex.App.1982). At the exemplar trial, the jury found that the evidence presented, which related to Continental Airlines 1987 advertising campaign on pilot training and safety, amounted to a

deceptive trade practice. The jury also found that the deceptive trade practice was not a producing cause of plaintiff Karen Johnson's injuries. In their motion for partial summary judgment, defendants contend that the finding on producing cause bars claims for deceptive trade practices in all cases. We disagree.

In a case focusing on false advertising, the element of deceptive trade practice can be bifurcated from the element of producing cause. Producing cause is "an efficient, exciting or contributing cause, which in a natural sequence, produces the injuries or damages complained of, if any, and without which the injury would not have occurred." *Pope v. Rollins Protective Services Co.,* 703 F.2d 197, 202 (5th Cir.1983). Unlike theories of causation applicable to common law torts, foreseeability is not an issue of producing cause. *Id.,* at n. 4 (citing cases). Once a plaintiff has demonstrated that defendant's advertising was false or deceptive in a manner described in the statute, plaintiff bears the additional burden of demonstrating that he was induced to expose himself to harmful forces, in whole or in part, by the deceptive trade practice. *Id.,* at 202–03; *Riojas v. Lone Star Gas Co.,* 637 S.W.2d 956 (Tex. App.1982). The fact that defendant's representations of safety and pilot training amount to a deceptive trade practice is common to all consolidated cases. The finding turned on a comparison of the representations to evidence of the management and operational systems, evidence fully presented on common law theories of liability. Plaintiffs and defendants benefited from the efficiency of consolidating this comparison element for trial in one action. Whether each plaintiff was exposed to and considered the deceptive advertising campaign in purchasing tickets for travel on Continental Airlines depends on the testimony of each plaintiff and, therefore, was not subject to consolidation. *See* Order MDL 751–33, at 1487–88 (producing cause issue turned on credibility factors best left to the jury).

We have considered and reject defendants' contention that pretrial activity surrounding the DTPA claims resulted in any-

thing other than a clear bifurcation order and presentation of evidence at trial in accordance with that order. The court ordered consolidated trial on plaintiffs' theories that defendants had violated the statute by (1) engaging in false, misleading or deceptive trade practices, (2) breach of an express or implied warranty, and/or (3) committing an unconscionable act or course of conduct. Pursuant to a trial plan tendered by plaintiffs, the element of "producing cause" was bifurcated and submitted to the jury by separate interrogatory. The nature of the pending plan for bifurcation was known to all parties prior to trial.[17]

The jury found that the 1987 advertising campaign related to safety and pilot training was either deceptive or unconscionable.[18] Whether the deceptive advertising campaign was a producing cause of injury to each plaintiff is a genuine issue of material fact which precludes summary judgment on claims of other plaintiffs.

Defendants also contend that plaintiffs' trial presentation failed to support certain allegations underlying the court's pretrial determination that choice-of-law principles applicable to claims under the Texas Deceptive Trade Practices Act. The contention is basically a motion for reconsideration of our prior order on the issue. Defendants contend further that the theory of the case ultimately tried is akin to fraud which requires different analysis under the Restatement (Second) of Conflicts of Law. We are not persuaded that either contention undercuts our earlier choice of law rulings. We affirm our earlier choice of law ruling. *See* Order MDL 751–24, slip op. at pp. 6–7 (D.Colo. Dec. 23, 1988).

### 2. *Defendants' Motion to Dismiss.*

Defendants also contend that the Texas Deceptive Trade Practices Act ("DTPA") is unconstitutional as applied to Continental Airlines in this air crash litigation. The court rejected the position previously. Defendants raise two additional challenges to the statute based on the proposition that

multiple treble-damage awards would violate the Due Process Clause of the Fourteenth Amendment and unreasonably regulate speech in violation of the First Amendment. We have considered and reject defendants' contentions that the DTPA is unconstitutional as applied to this litigation.

Liability under the DTPA turns on the acts and decisions of corporate executives in designing the 1987 advertising campaign related to safety and pilot training. This conduct, as well as the actual safety policies and training programs to which it relates, emanates from Continental Airlines corporate headquarters in Texas. The litigation focuses, therefore, on the representations of corporate image transmitted through various media by a corporation domiciled in Texas.

Application of the DTPA to the 1987 advertising campaign does not offend the Commerce Clause of the United States Constitution. Facially or as applied in this case, the statute neither discriminates against interstate commerce, nor favors resident corporations. *See Brown–Forman Distillers v. New York State Liquor Authority,* 476 U.S. 573, 579, 106 S.Ct. 2080, 2084, 90 L.Ed.2d 552 (1985). Even assuming the truth of defendants' assertion that the Texas standard is more restrictive than regulation imposed by other states, the Texas statute would not subject *resident* corporations to the inconsistencies prohibited by the Commerce Clause. *CTS Corp. v. Dynamics Corp. of America,* 481 U.S. 69, 88–89, 107 S.Ct. 1637, 1649–50, 95 L.Ed.2d 67 (1986). Defendants have not demonstrated that the statute requires conduct violative of the laws of other states or imposes confusion as to the applicable guidelines regulating that conduct. *See Brown–Forman,* 476 U.S. at 583–84, 106 S.Ct. at 2086–87. Although the statute indirectly effects interstate commerce by regulating resident corporations whose market and operations extend beyond the

---

17. Defendants were granted leave to conduct additional depositions of Karen Johnson and her travel agents in regard to her exposure to the 1987 advertising campaign on safety and her considerations in purchasing tickets for Flight on 1713.

18. Claims for breach of warranty theories under the statute were dismissed on motion of defendants at the close of plaintiffs' case.

borders of Texas, it is not a pure regulation of interstate commerce.

The statute's even-handed approach to deceptive trade practices is thus subject to the balancing test articulated in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). *Brown–Forman*, 476 U.S. at 579, 106 S.Ct. at 2084. In the circumstances of this litigation, we find that Texas's legitimate interest in regulating and prohibiting deceptive advertising by its resident corporations far outweighs the burden that a corporation may be held accountable under the statute by residents of other states whose contact with the corporation arises in interstate commerce. *CTS Corp.*, 481 U.S. at 89–94, 107 S.Ct. at 1649–52.

 The contacts articulated above also demonstrate that application of the statute does not offend the Due Process Clause of the Fourteenth Amendment. *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 313–20, 101 S.Ct. 633, 640–44, 66 L.Ed.2d 521 (1980). The presence of Continental Airlines corporate headquarters in Texas, as we noted above, creates the state's legitimate interest in regulating its marketing conduct. Furthermore, this contact makes it reasonable for Continental to anticipate that its advertising will be judged by the standards of the state from which the message emanates. *See also* Order MDL 751–16, 720 F.Supp. 1445, 1451–52, 1453 (D.Colo. Nov. 15, 1988).

 The potential burden of treble-damage judgments in favor of the several passengers of Flight 1713 does not persuade us that the DTPA is unconstitutional. *See* Tex. Bus. & Comm.Code § 17.50. The trebling provision is tied directly to damages, the subjective standard of "actual awareness," and an itemized list of violative conduct. Tex. Bus. & Comm.Code §§ 17.45(9), 17.46. The trebling provision does not present the due process problems of arbitrariness and unfettered discretion now before the Supreme Court with regard to punitive damages. *See Bankers Life & Cas. v. Crenshaw*, 486 U.S. 71, 108 S.Ct. 1645, 1656, 100 L.Ed.2d 62 (O'Connor, J., concurring), 108 S.Ct. at 1650 (Marshall, J.,

concurring); *Kelco Disposal v. Browning Ferris Indus.*, 845 F.2d 404, 410 (2d Cir. 1988), *cert. granted,* —— U.S. ——, 109 S.Ct. 527, 102 L.Ed.2d 559 (1988) (punitive damage award not an excessive fine under the Eighth Amendment); *Mercer v. Long Mfg, N.C., Inc.*, 665 F.2d 61, 73–74 (5th Cir.1982) (DTPA treble damages neither excessive fine under Texas Constitution nor violative of Fourteenth Amendment). The treble damages remedy is irrelevant to First Amendment analysis of the DTPA because commercial speech is entitled to protection from unreasonable regulation only if it (1) concerns a lawful activity and (2) is neither fraudulent nor misleading. *Posadas de Puerto Rico Associates v. Tourism Council of Puerto Rico*, 478 U.S. 328, 106 S.Ct. 2968, 92 L.Ed.2d 266 (1986). We affirm that portion of Order MDL 751–24 regarding the constitutionality of the DTPA and find further that the treble damages portion of the statute does not violate the guarantees of the First, Eighth, or Fourteenth Amendments.

### 3. Conclusion—Status of Consolidated DTPA Claims.

Defendant's motion for partial summary judgment on claims under the Texas Deceptive Trade Practices Act is DENIED. Defendant's motion to dismiss deceptive trade practices claims as unconstitutional is also DENIED. We affirm the jury's verdict and re-affirm our prior rulings on the Texas Deceptive Trade Practices Act. The jury found that Continental Airlines 1987 advertising campaign amounted to a deceptive trade practice. Whether that advertising was a producing cause of the injuries of each plaintiff is an individual issue to be litigated, along with compensatory damages, on remand. Due to the format of the jointly tendered Special Verdict Form on deceptive trade practices, the jury did not reach the question of whether the violation was done knowingly, with actual awareness of falsehood. Since evidence going to the issue will be limited, allowing each plaintiff to litigate the issue on remand will not defeat the efficiency gained in joint litigation of all other common issues. Statutory claims for breach of warranty in all consolidated cases are DISMISSED WITH PREJUDICE.

### C. *Status of Other Consolidated Claims.*

■ Pursuant to choice of law rulings and stipulations, issues of compensatory damages are determined by the law of the state in which a plaintiff resided at the time of the crash. At the exemplar trial, the jury resolved one issue common to the compensatory damage claims of plaintiffs residing in Idaho. In Order MDL 751–33, we affirmed the jury's finding that defendant's conduct leading to the crash had been willful or reckless as those terms are defined by Idaho law. *See* Order MDL 751–33, 720 F.Supp. 1467, 1474–78 (D.Colo. Mar. 10, 1989). We now affirm that verdict as it applies to consolidated cases brought by Idaho residents. Upon remand, plaintiffs residing in Idaho at the time of the crash may receive full compensatory damage awards and are not subject to the $400,000 limitation on non-economic damages imposed under Idaho Code § 6–1603. This order has the effect of implementing the over all trial plan as it applies to the consolidated cases. It formally extends the results of the trial plan to all plaintiffs and defendants in a fair and understandable way. *See Danner v. Himmelfarb,* 858 F.2d 515, 520–21 (9th Cir.1988); *In re Korean Airlines Disaster,* 829 F.2d 1171, 1174 (D.C.Cir.1987), *aff'd sub nom.,* —— U.S. ——, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989) (discussing law of the case doctrine applicable to multidistrict litigation).

### IV. CASES NOT CONSOLIDATED FOR TRIAL.

The foregoing discussion resolves the status of all but ten (10) passenger cases. These cases were not formally consolidated for resolution through the exemplar trial.[19] Plaintiffs contend the effect of the exemplar trial on these cases is a matter of res judicata or collateral estoppel. By way of summary, we hold (1) issues of res judicata and collateral estoppel are properly before this court, (2) principles of collateral estoppel prevent defendants from precluding litigation of all issues in all but two cases not consolidated for trial, and (3) principles of collateral estoppel prevent plaintiffs in these cases from precluding relitigation of issues decided against defendants at the exemplar trial.

■ Res judicata is a bar against relitigation of adjudicated claims between the same parties. *Brown v. Felsen,* 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979). Res judicata is a doctrine of legal right. *Nations v. Sun Oil Co.,* 705 F.2d 742, 744 (5th Cir.), *cert. denied,* 464 U.S. 893, 104 S.Ct. 239, 78 L.Ed.2d 229 (1983). Collateral estoppel is an equitable doctrine. *Blonder–Tongue Labs, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971); *Nations,* 705 F.2d at 744. Collateral estoppel operates to preclude relitigation of an issue in certain circumstances if one of the parties to the subsequent action was also a party to the first action. *United States v. Mendoza,* 464 U.S. 154, 158, 104 S.Ct. 568, 571, 78 L.Ed.2d 379 (1983); *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 329, 99 S.Ct. 645, 650, 58 L.Ed.2d 552 (1979); *Blonder–Tongue Labs,* 402 U.S. at 329–34, 91 S.Ct. at 1443–46 (mutuality of parties no longer a prerequisite to collateral estoppel). Federal law controls the preclusive effects of successive diversity suits. *Petromanagement Corp. v. Acme–Thomas Joint Venture,* 835 F.2d 1329, 1332–33 (10th Cir. 1988). For purposes of collateral estoppel, as opposed to res judicata, a party may seek preclusion on an issue that has been fully litigated in a prior action, although that determination has not been reduced to final or formal judgment. *United Business Communications v. Racal–Milgo, Inc.,* 591 F.Supp. 1172, 1185 (D.Kan.1984).

Plaintiffs' position is that traditional notions of collateral estoppel attach to elements of liability established at the exemplar trial. Plaintiffs contend that the verdicts may be asserted offensively in subsequent cases to estop relitigation of liability

---

**19.** By plaintiff these cases are: *Harkenrider,* Case No. 88–F–1994; *Vermuelen,* Case No. 88–F–1993; *Hepp,* Case No. 89–F–135; *Watson,* Case No. 89–F–136; *Case,* Case No. 89–F–137; *L.* *Kemper,* Case No. 89–F–969; *J. Kemper,* Case No. 89–F–970; *Wadsworth,* Case No. 89–F–971; *Noe,* Case No. 89–F–972; *Davis,* Case No. 89–F–973.

and violations of the Texas Deceptive Trade Practices Act, but may not be asserted defensively to preclude nonparties from litigating their claims for punitive damages or against Texas Air Corporation. Non-mutual offensive collateral estoppel is the legal term describing plaintiffs' theory.[20]

Defendants contend all plaintiffs are bound by the entire verdict in the exemplar case by their implied or express intent and participation at trial.

■ In Section I above, we held that cases filed or transferred after the entry of Order MDL 751–17 were not consolidated in the exemplar trial. As to passenger cases pending in this court and not consolidated for trial, we agree with plaintiffs that the effect of the exemplar trial, if any, is a matter of collateral estoppel. The issues previously decided are identical to those of the remaining passenger plaintiffs, common issues have been finally adjudicated on the merits, and the parties had a full and fair opportunity to litigate the issues. *Lombard v. Axtens*, 739 F.2d 499, 502 (10th Cir.1984) (setting forth elements of collateral estoppel); *see also Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1287–89 (5th Cir.1989). Applicability of the doctrine as a bar to relitigation turns on consideration of the relationship between the parties and principles of equity.

A. *Preliminary Issues.*

■ We reject plaintiffs' contention that the issue of collateral estoppel is not properly before the court. *First,* where the record contains relevant uncontroverted facts, courts may not ignore the legal and equitable effects of that record simply because neither party has sought formal review by specifically pleading collateral estoppel. *See American Furniture Co. v. International Accommodations Supply,* 721 F.2d 478, 482 (5th Cir.1981). On several occasions, plaintiffs argued that the real issue involved at this point in the litigation is collateral estoppel and outlined their position on the issue.[21] The instant motions were filed after the court reviewed the earlier pleadings and invited the parties to file motions for summary judgment where applicable. Plaintiffs may not raise an issue by contending it is essential to the analysis at hand and then avoid review by refusing to seek specific relief.

■ *Second,* the fact that consecutive suits against the same defendant are pending before the same judge who entered the judgments on which plaintiffs intend to rely does *not* prevent this court from reaching the issue of collateral estoppel. *See, e.g., National Union Fire Ins. v. Continental Illinois Corp.,* 673 F.Supp. 267, 270 (N.D.Ill.1987) (multidistrict judge interpreting preclusive effects of orders in previously closed cases); *Sentner v. Amtrak,* 540 F.Supp. 557, 558 n. 3 (D.N.J.1982) (multidistrict judge determining defendant's right to relitigate pretrial issues in later filed cases); *In re Yarn Processing Litigation,* 472 F.Supp. 174, 176–77 (S.D.Fla. 1979) (predetermining preclusive effect of consolidated trial); *In re Nissan Antitrust Litigation,* 471 F.Supp. 754, 756 (S.D.Fla. 1979) (same, cited by plaintiff *Case,* 89–F–137); Wright, Miller & Cooper, Federal Practice and Procedure, Jurisdiction § 3866 at pp. 622–23.

■ Cases not consolidated for trial are subsequent actions in which the issue of offensive collateral estoppel has arisen. The fact that the original trial was also

---

**20.** Offensive collateral estoppel is used by a plaintiff seeking to foreclose a defendant from denying an issue determined in a previous action brought by different plaintiffs. Defensive collateral estoppel is used by a defendant to prevent a plaintiff from relitigating an issue plaintiff lost in a prior action. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 4, 99 S.Ct. 645, 649 n. 4, 58 L.Ed.2d 552 (1979). The use asserted by plaintiffs in this case is non-mutual because they contend defendants may not invoke the doctrine against plaintiffs who were not parties to the exemplar trial. *See A & A Con-*

*crete v. White Mountain Apache Tribe,* 781 F.2d 1411, 1417 (9th Cir.), *cert. denied* 476 U.S. 1117, 106 S.Ct. 2008, 90 L.Ed.2d 659 (1986); Wright, Miller & Cooper, Federal Practice and Procedure, Jurisdiction § 4465.

**21.** The position was outlined in sets of pleadings on post-trial motions and the Final Pretrial Order, filed by the Plaintiffs Steering Committee, individual plaintiffs, and groups of plaintiffs represented by common counsel. Other groups of plaintiffs joined in the position by filing notice with the court.

held before this court is a fortunate coincidence weighing in favor of determination of the collateral estoppel issues prior to remand. *See Lynch v. Merrell–National Laboratories,* 830 F.2d 1190, 1193 (1st Cir. 1987) (court persuaded by collateral estoppel analysis of judge presiding over consecutive multidistrict cases); Wright, Miller & Cooper, Federal Practice and Procedure, Jurisdiction § 4465 at pp. 591–93 (when circumstances allow, trial court's familiarity with first trial offers best forum for consideration of equitable factors involved in collateral estoppel). Plaintiffs' contention that this court must remand cases consolidated for pretrial proceedings prior to resolution of collateral estoppel issues is contrary to our duty to resolve common pretrial issues under the multidistrict litigation statute. *See* 28 U.S.C. § 1407.

### B. *Mutuality of Estoppel.*

■ We agree with the general proposition that collateral estoppel in this litigation is necessarily non-mutual—only plaintiffs are in a position to establish the necessary elements of estoppel. Collateral estoppel is unavailable as a defense against plaintiffs who were not joined in the exemplar trial. *Lynch v. Merrell–National Laboratories Inc.,* 830 F.2d 1190, 1192–93 (1st Cir.1987) (collateral estoppel cannot bar claimants not parties to joint trial); *A & A Concrete v. White Mountain Apache Tribe,* 781 F.2d 1411, 1417 (9th Cir.1986) (judgment of no liability cannot be plead offensively against a non-party plaintiff), *cert. denied,* 476 U.S. 1117, 106 S.Ct. 2008, 90 L.Ed.2d 659 (1986). Absent some relationship of actual control or privity, collateral estoppel violates due process if asserted to deny non-parties a full and fair opportunity to litigate the issues previously decided against their interest. *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 329, 99 S.Ct. 645, 650, 58 L.Ed.2d 552 (1979); *Blonder–Tongue Labs, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 329, 91

S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971); *Hansberry v. Lee,* 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940); *Ponderosa Development Corp. v. Bjordahl,* 787 F.2d 533, 536 (10th Cir.1986).

■ Of the ten (10) passenger cases not consolidated for trial, eight (8) plaintiffs lack the type of formal relationship to the litigants in the exemplar trial which is necessary to collaterally estop relitigation of common issues by non-parties. By order of the Judicial Panel, three (3) cases were transferred from the District of Idaho on January 25, 1989.[22] On May 26, 1989, the Panel affirmed conditional transfer orders entered in five (5) additional cases on January 30, 1989, formally transferring those cases to this court notwithstanding plaintiffs' objections.[23] None of these cases were pending in the District of Colorado when the exemplar trial commenced on January 9, 1989. Although one plaintiff testified at trial, and other plaintiffs are represented by active participants in the Plaintiffs Steering Committee, these factors alone are insufficient to demonstrate opportunity to control the litigation. *Benson and Ford, Inc. v. Wanda Petroleum Co.,* 833 F.2d 1172, 1174 (5th Cir.1987) (actual control is essential, witness status insufficient); *Ponderosa Development Corp. v. Bjordahl,* 787 F.2d 533, 536–37 (10th Cir.1986) (access to discovery as witness and same counsel insufficient); *In re Nissan Antitrust Litigation,* 471 F.Supp. 754, 757–59 (S.D.Fla.1979) (close coordination due to MDL practice is not actual control). The general rule barring collateral estoppel as a defense to the liability claims of non-parties applies to the following plaintiffs: (1) *Hepp,* Case No. 89–F–135, (2) *Watson,* Case No. 89–F–136, (3) *Case,* Case No. 89–F–137, (4) *L. Kemper,* Case No. 89–F–969, (5) *J. Kemper,* Case No. 89–F–970, (6) *Wadsworth,* Case No. 89–F–971, (7) *Noe,* Case No. 89–F–972, and (8) *Davis,* Case No. 89–F–973.

---

**22.** *Hepp,* Case No. 89–F–135; *Watson,* Case No. 89–F–136; and *Case,* Case No. 89–F–137.

**23.** *L. Kemper,* Case No. 89–F–969; *J. Kemper,* Case No. 89–F–970; *Wadsworth,* Case No. 89–F–971; *Noe,* Case No. 89–F–972; *Davis,* Case No. 89–F–973.

Circumstances regarding the complaints of the remaining two (2) plaintiffs demand a different result, however. Collateral estoppel is an equitable doctrine. *Nations v. Sun Oil Co.*, 705 F.2d 742, 744 (5th Cir.), *cert. denied*, 464 U.S. 893, 104 S.Ct. 239, 78 L.Ed.2d 229 (1983). Trial courts are afforded broad discretion to apply its principles in the interests of "justice and equity." *Blonder–Tongue Labs, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 333–34, 91 S.Ct. 1434, 1445, 28 L.Ed.2d 788 (1971); *see also Jack Faucett Associates v. American Telephone & Telegraph*, 744 F.2d 118, 125 (D.C.Cir.1984), *cert. denied*, 469 U.S. 1196, 105 S.Ct. 980, 83 L.Ed.2d 982 (1985). Although the primary focus of equitable considerations rests appropriately on the party who will be prevented from further litigation, "[f]airness to both parties must be considered when it is applied." *Nations*, 705 F.2d at 745; *see also Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979).

Prior to Supreme Court articulation of the constitutional limitations to collateral estoppel, courts held that equity allows a non-party to be bound by a prior judgment against his interest if the non-party induces an opponent to rely on the former adjudication as dispositive of the non-party's claims. *Christiansen v. Farmers Ins. Exchange*, 540 F.2d 472 (10th Cir.1976); Rest. (Second) Judgments § 62; Wright, Miller & Cooper, Federal Practice and Procedure, Jurisdiction § 4453 at p. 457. We believe that this theory of collateral estoppel by reliance remains viable, subject to the condition that non-party was provided a full and fair opportunity to litigate his claims. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 333–37, 99 S.Ct. 645, 653–55, 58 L.Ed.2d 552 (1979).

█ A non-party may be precluded from relitigating issues decided against his interest in the first action if the non-party: (1) alleges claims arising out of the same transaction or occurrence as those in the first action, (2) had knowledge of the first action prior to judgment, (3) conducted his own cause against that defendant in a man-

ner that reasonably induced the defendant to believe his cause would be governed by judgment in the first action, and (4) had an opportunity to participate in the first action. *Id.;* Rest. (Second) Judgments § 62; *cf. Lynch v. Merrell–National Laboratories Inc.*, 830 F.2d 1190, 1192–93 (1st Cir. 1987) (plaintiffs led to believe withdrawal from joint trial would not effect their claims could not be barred from relitigation by collateral estoppel).

█ Plaintiffs Harkenrider and Vermuelen filed their complaints on December 9, 1988, three days prior to the original date set for trial in the exemplar case.[24] Plaintiffs Harkenrider and Vermuelen are both represented by the a member of the Plaintiffs Steering Committee who served as lead trial counsel during the exemplar trial. Their complaints contain identical statements of intent to participate in the exemplar trial:

> Written notice to defendants by consumers in the same class as plaintiffs has been provided at least thirty (30) days before filing this complaint; written notice to defendants by these plaintiffs is rendered impracticable by reason of the *necessity of filing this suit prior to trial of the "exemplar case."*

*Vermuelen* Complaint at ¶ 28 (Case No. 88–F–1993); *Harkenrider* Complaint at ¶ 25 (Case No. 88–F–1994). In this context, common representation demonstrates that defensive collateral estoppel will not actually prejudice plaintiffs' opportunity to litigate the claims decided against their interest. Their attorney vigorously represented all plaintiffs at pretrial proceedings, in the development of the trial plan, and at trial itself. The complaints indicate plaintiffs Harkenrider and Vermuelen entered the litigation confident that they would be well represented at the exemplar trial. Earlier in this order, we held that the exemplar trial on consolidated claims fully and fairly presented the claims of multiple plaintiffs. The complaints are analogous to formal confession of consolidation. *See In re Bendectin Litigation*, 857 F.2d 290 (6th Cir. 1988), *cert. denied sub nom.*, —— U.S. ——,

---

**24.** Trial was subsequently continued to January 9, 1989.

109 S.Ct. 788, 102 L.Ed.2d 779 (1989); *see also* Section I, *supra* (consolidation).

In these two cases, collateral estoppel relieves the parties of the cost and vexation of multiple lawsuits, conserves judicial resources, and encourages reliance on adjudication, without denying plaintiffs their rights to due process. *See United States v. Mendoza,* 464 U.S. 154, 158–59, 104 S.Ct. 568, 571–72, 78 L.Ed.2d 379 (1984); *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980).

Accordingly, the rule prohibiting collateral estoppel of the claims of non-party plaintiffs prevents mutuality of estoppel in most of the cases not formally consolidated for resolution through the exemplar trial. Defendants may rely on the verdicts in the exemplar trial, however, to preclude relitigation of the claims of plaintiffs Vermuelen and Harkenrider, due to voluntary consolidation. Mutuality of estoppel exists in *Vermuelen* and *Harkenrider.*

### C. *Non–Mutual Offensive Collateral Estoppel.*

██ Whether collateral estoppel is available to plaintiffs as a means of establishing elements of liability previously decided at the exemplar trial is also a matter of equitable discretion. *Nations v. Sun Oil Co.,* 705 F.2d 742, 744 (5th Cir.), *cert. denied,* 464 U.S. 893, 104 S.Ct. 239, 78 L.Ed.2d 229 (1983); Wright, Miller & Cooper, Federal Practice and Procedure, Jurisdiction § 4465 at p. 589 ("Nonmutual issue preclusion is not available as a matter of right."). In *Parklane Hosiery,* the Supreme Court established a general rule that:

"[I]n cases where a plaintiff could easily have joined in the earlier action, or where, either for the reasons discussed above or for other reasons, the application of offensive collateral estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel."

439 U.S. at 331, 99 S.Ct. at 652 (discussing principles of equity and fairness applicable to non-mutual offensive collateral estoppel); *see also Jack Faucett Associates v. American Telephone & Telegraph,* 744 F.2d 118, 125–26 (D.C.Cir.1984), *cert. denied,* 469 U.S. 1196, 105 S.Ct. 980, 83 L.Ed.2d 982 (1984).

Blind application of non-mutual offensive collateral estoppel would act as an incentive for plaintiffs to delay prosecution of their own action to secure the benefits of other adjudication against the same defendant. *Parklane Hosiery,* 439 U.S. at 329–30, 99 S.Ct. at 650–51; *Charles J. Arndt, Inc. v. City of Birmingham,* 748 F.2d 1486, 1494 (11th Cir.1984). Such an incentive would run contrary to the policies underlying rules allowing permissive joinder, consolidation, intervention and the multidistrict consolidation statute by increasing rather than decreasing litigation. *Id.; In re Yarn Processing Litigation,* 472 F.Supp. 174, 177 (S.D.Fla.1979).

The rule is to be viewed in the context of fairness to the defendant, which is a "critical finding necessary for the application of collateral estoppel." *Jack Faucett Assoc.,* 744 F.2d at 125. The rule has developed into a standing principle that a "wait and see" plaintiff is barred from recouping the unilateral benefits of non-mutual collateral estoppel absent circumstances explaining that plaintiff's failure to join. *See, e.g., Hauser v. Krupp Steel Producers, Inc.,* 761 F.2d 204, 207 (5th Cir.1985); *Charles J. Arndt, Inc. v. City of Birmingham,* 748 F.2d 1486, 1494 (11th Cir.1984); *Collins v. Seaboard Coastline Railroad Co.,* 681 F.2d 1333, 1335–36 (11th Cir.1982).

██ We find that in cases not consolidated for trial, justice, fairness and equity weigh against permitting "wait and see" plaintiffs to assert non-mutual offensive collateral estoppel. Plaintiffs Hepp, Watson, Davis, Wadsworth, Noe, LeRoyce Kemper and Jason Kemper filed their complaints prior to or during trial through counsel who represent several other plaintiffs in this litigation and actively participated in trial. Plaintiff Case filed suit on November 19, 1988 and testified at the consolidated trial. As noted earlier, plaintiffs Vermuelen and Harkenrider confessed knowledge of the trial in their complaints and were represented by an attorney who was also lead trial counsel. While these facts are insufficient to render the verdicts

in the consolidated trial binding on these plaintiffs, they indicate a clear awareness of the existence and pendency of the consolidated trial in which they, like all other plaintiffs, could have joined. Throughout the pretrial phase of this litigation, counsel discussed the existence of cases not filed and anticipated filing dates. Court and counsel expressed the view that the consolidated trial would dispose of liability issues in all cases. It would be unfair to defendants, as well as consolidated plaintiffs, to allow "wait and see" plaintiffs to benefit from the joint efforts in this protracted, multi-party litigation, without being equally exposed to the risks of adverse verdicts on the threshold issues. *See In re Yarn Processing Litigation*, 472 F.Supp. 174, 177 (S.D.Fla.1979).

Furthermore, permitting plaintiffs to assert non-mutual collateral estoppel in this litigation would not further the efficiency goals the doctrine is designed to promote. All of the evidence presented in the first trial to establish that defendants' conduct was "willful or reckless," as defined by Idaho law, would be presented in subsequent trials of liability for punitive damages under Texas law. *See* Order MDL 751–33, 720 F.Supp. 1467, 1476–77 (D.Colo. Mar. 10, 1989) (distinguishing levels of culpability assessed as to each issue). Similarly, this evidence also serves as the basis for the comparison between advertising and actual practices which underlies the issue of whether defendants violated the Texas Deceptive Trade Practices Act. Collateral estoppel serves to relieve the cost and vexation of multiple lawsuits and to conserve judicial resources. *See United States v. Mendoza*, 464 U.S. 154, 158–59, 104 S.Ct. 568, 571–72, 78 L.Ed.2d 379 (1983). Simply taking two issues from the jury without any corresponding reduction of the evidence presented at trial would not save time, expense, or burden.

Accordingly, we find that plaintiffs may not assert non-mutual offensive collateral estoppel based on the verdicts of the exemplar trial. Collateral estoppel is available only in cases where it may be mutually asserted by plaintiffs and defendants.

### D. *Conclusion—Status of Remaining Cases.*

In eight (8) of the remaining ten passenger cases, defendants' inability to assert collateral estoppel as a defense precludes mutuality: (1) *Hepp*, Case No. 89–F–135, (2) *Watson*, Case No. 89–F–136, (3) *Case*, Case No. 89–F–137, (4) *L. Kemper*, Case No. 89–F–969, (5) *J. Kemper*, Case No. 89–F–970, (6) *Wadsworth*, Case No. 89–F–971, (7) *Noe*, Case No. 89–F–972, and (8) *Davis*, Case No. 89–F–973. Plaintiffs in these cases may not rely on the verdicts of the exemplar trial to establish their own claims.

In *Vermuelen*, Case No. 88–F–1993, and *Harkenrider*, Case No. 88–F–1994, equity and voluntary consolidation allow defendants to bar relitigation of claims for punitive damages and against Texas Air Corporation. Because collateral estoppel in these cases would be mutual, plaintiffs Vermuelen and Harkenrider are entitled to rely on the exemplar trial verdicts decided in their favor. Defendants' motion for partial summary judgment is GRANTED as to these two cases. These two cases will be treated as if consolidated for all purposes. Further litigation in these cases will proceed as in cases consolidated in the exemplar trial.

## V. CREW MEMBER CASES.

Plaintiffs Christopher Metts and Kelly Englehart were crew members on board Flight 1713 the day of the crash. On December 9, 1988, Metts, and Englehart, joined by her husband, filed separate complaints in this court alleging theories of liability in tort and under the Texas Deceptive Trade Practices Statute. (the "crew member cases"). The crew-member plaintiffs are represented by lead trial counsel for the Plaintiffs Steering Committee. The complaints parallel the majority of those filed in this litigation. Mrs. Englehart testified at trial. On March 10, 1989, this court denied plaintiffs motion for new trial in the exemplar case. On March 17, 1989, plaintiffs Metts and Englehart filed suit against Continental Airlines and Texas Air Corporation in the District Court of Harris County, Texas, alleging only theories of

tort liability. On March 23, 1989, plaintiffs moved to dismiss their claims in federal court, without prejudice, pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure. Plaintiffs contend their cases are dissimilar because they are governed by Texas employment law issues not yet litigated in this action and that the case had not progressed beyond the filing of a complaint and answer.

On March 24, 1989, defendants objected to voluntary dismissal, contending that orders of this court and participation of counsel and Mrs. Englehart at trial bound the crew member plaintiffs to the verdicts of the exemplar trial. Defendants contend they would be prejudiced by voluntary dismissal. The court stayed review of plaintiffs' motions until the effect of the exemplar trial could be determined. On April 4, 1989, defendants filed motions for summary judgment in the crew member cases.

■ Rule 41(a)(2) provides that the court, in its sound discretion, should allow a plaintiff to take a voluntary non-suit, on condition of bearing defendants costs when appropriate, so long as the procedure would not do "legal prejudice" to defendants. *Kovalic v. DEC International, Inc.*, 855 F.2d 471, 473 (7th Cir.1988). When an action has been pending for only a short time and no orders have entered which dispose of rights of either party, denial of a motion for voluntary dismissal is an abuse of discretion absent clear legal prejudice to the defendant. *Conafay v. Wyeth Laboratories*, 841 F.2d 417, 420 (D.C.Cir.1988). "Plain legal prejudice" includes such factors as effort and expense in preparing for trial, excessive delay and lack of diligence in prosecuting the action, insufficient explanation for taking nonsuit, and the filing of motions for summary judgment. *Kovalic*, 855 F.2d at 474; *Citizens Savings Assn. v. Franciscus*, 120 F.R.D. 22, 25 (M.D.Pa.1988). Motions for summary judgment filed after the motion for voluntary dismissal are insufficient to support a finding of prejudice. *Conafay*, 841 F.2d at 420. The burdens of relitigation are appropriately cured by conditioning dismissal on the payment of costs for work and effort incurred in the first case that would not be of use in the second.

*Conafay*, 841 F.2d at 419; *Taragan v. Eli Lilly & Co., Inc.*, 838 F.2d 1337, 1340 (D.C. Cir.1988) (limitations on conditional award of costs).

■ As set forth above, crew member cases are not bound by the verdicts in the exemplar case. *See* Section I, *supra.* Although defendants' motion to clarify consolidation of these cases, filed January 6, 1989, put these plaintiffs on clear notice of their opportunity to join in the exemplar trial, the cases were not consolidated. Defendants' objections to voluntary dismissal and motions for summary judgment clearly demonstrate that the applicability of collateral estoppel in these cases requires preliminary determination of whether the claims are barred by the Texas statutory scheme on workmen's compensation. Texas state courts are a more appropriate forum to litigate this threshold issue. If review of the verdicts in the exemplar trial becomes necessary, defendants would not be prejudiced by having to raise the principles of collateral estoppel applicable to these "wait and see" plaintiffs in state court. *See Conafay v. Wyeth Laboratories*, 841 F.2d 417, 420 (D.C.Cir.1988) (court abuses discretion in denying voluntary dismissal on ground claims subject to summary judgment based on evidence from prior federal consolidated trial).

Because defendants will suffer no plain legal prejudice from voluntary dismissal of the crew cases, the motion is GRANTED on condition of payment of fees and costs incurred in this action. Counsel are DIRECTED to prepare a fair and reasonable proposed order on costs necessary to this litigation; plaintiffs must bear defendants' costs as a condition of voluntary dismissal. Defendants motions for summary judgment are DENIED AS MOOT.

## ORDER

IT IS HEREBY ORDERED that jury verdicts returned in the exemplar trial January 31, 1989 are AFFIRMED; the jury found (1) defendant Continental Airlines, Inc. engaged in willful or reckless misconduct, as defined in the Court's instructions of law, (2) the Federal Aviation Administra-

**1526**

tion, an agency of the United States, a non-party designated by defendant to be at fault under Colorado law, was negligent with regard to the November 15, 1987 departure of Continental Airlines Flight 1713 from Denver, Colorado, but this negligence did not cause injuries to plaintiffs, (3) defendant Continental Airlines, Inc. did not engage in gross negligence as defined in the Court's instructions of law and is not liable for punitive damages, and (6) defendant Continental Airlines, Inc. engaged in false, misleading or deceptive acts or practices as defined by the Texas Deceptive Trade Practices Act;

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss All Texas Deceptive Trade Practices Act Claims, filed April 4, 1989, is DENIED;

IT IS FURTHER ORDERED that Defendants' Motion for Partial Summary Judgment on Texas Deceptive Trade Practices Act Claims, filed April 4, 1989, is DENIED;

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment on Claims for Punitive Damages and Against Texas Air Corporation, filed April 4, 1989, is GRANTED IN PART; there being no just reason for delay, the Clerk of the Court is directed to enter judgment in favor of defendants and against plaintiffs on claims for punitive damages and claims against Texas Air Corporation, in the following seventeen (17) cases:

1. *Brenda A. Selleh, et al. v. Continental Airlines, Inc. et al.,* Case No. 88-F-346

2. *Libby Smoot v. Continental Airlines, et al.,* Case No. 88-F-661 (D.Idaho Case No. 88-1040)

3. *Kathleen A. Cooper, et al. v. Continental Airlines, Inc. et al.,* Case No. 88-F-663 (D.Idaho Case No. 88-1073)

4. *Shirley Jean Weltz, et al. v. Continental Airlines, Inc. et al.,* Case No. 88-F-665 (D.Idaho Case No. 88-1090)

5. *Christopher Davis, et al. v. Continental Airlines, Inc. et al.,* Case No. 88-F-667 (D.Idaho Case No. 88-1019)

6. *Angela Tlucek, et al v. Continental Airlines, Inc. et al.,* Case No. 88-F-668 (D.Idaho Case No. 88-1021)

7. *Wayne Davis v. Continental Airlines, Inc. et al.,* Case No. 88-F-670 (D.Idaho Case No. 88-1019)

8. *David Daniel v. Continental Airlines, Inc. et al.,* Case No. 88-F-671 (D.Idaho Case No. 88-1020)

9. *Robert O. Link, et al. v. Continental Airlines, Inc. et al.,* Case No. 88-F-787 (D.New Jersey Case No. 88-498)

10. *Patti L. Halford v. Continental Airlines, Inc. et al.,* Case No. 88-F-831 (D.Idaho Case No. 88-1100)

11. *Jeffrey Hoagland et al. v. Continental Airlines, Inc. et al.,* Case No. 88-F-832 (D.Idaho Case No. 88-1106)

12. *Ann C. Stewart, et al. v. Continental Airlines, Inc. et al.,* Case No. 88-F-898 (D.Idaho Case No. 88-1119)

13. *Keith L. Smith, et al. v. Continental Airlines, Inc. et al.,* Case No. 88-F-990 (D.Idaho Case No. 88-1141)

14. *Michael Spicer, et al. v. Continental Airlines, Inc. et al.,* Case No. 88-F-991 (D.Idaho Case No. 88-1147)

15. *Douglas Self, et al. v. Continental Airlines, Inc. et al.,* Case No. 88-F-1358

16. *Mark Harkenrider, et al. v. Continental Airlines, Inc. et al.,* Case No. 88-F-1994

17. *Paul Joe Vermuelen v. Continental Airlines, Inc. et al.,* Case No. 88-F-1993

IT IS FURTHER ORDERED that neither plaintiffs nor defendants are collaterally estopped from litigating claims or defenses, based upon the verdicts returned in the exemplar trial, in any of the following eight (8) cases:

1. *Stephen Hepp v. Continental Airlines, Inc. et al.,* Case No. 89-F-135 (D.Idaho Case No. 88-1406)

2. *Kenneth F. Watson, et al. v. Continental Airlines, Inc. et al.,* Case No. 89-F-136 (D.Idaho Case No. 88-1405)

3. *Richard Case, et al. v. Continental Airlines, Inc. et al.,* Case No. 89-F-137 (D.Idaho Case No. 88-1396)

4. *LeRoyce Kemper, et al. v. Continental Airlines, Inc. et al.,* Case No. 89-F-969 (D.Idaho Case No. 89-1007)

5. *Jason Kemper, et al v. Continental Airlines, Inc. et al.,* Case No. 89-F-970 (D.Idaho Case No. 89-1008)

6. *Gregory S. Wadsworth v. Continental Airlines, Inc. et al.,* Case No. 89-F-971 (D.Idaho Case No. 89-1009)

7. *Antone R. Noe, et al. v. Continental Airlines, Inc. et al.,* Case No. 89-F-972 (D.Idaho Case No. 89-1042)

8. *Michelle A. Davis v. Continental Airlines, Inc. et al.,* Case No. 89-F-973 (D.Idaho Case No. 89-1422)

IT IS FURTHER ORDERED that Motions of plaintiffs Metts and Englehart for Voluntary Dismissal Pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, filed March 23, 1989, are GRANTED on condition of payment of costs; counsel are DIRECTED to file a jointly proposed order of dealing with costs on or before June 28, 1989; upon defendants' notification that payment has been made pursuant to the order, the Clerk of the Court is directed to enter judgment dismissing, without prejudice, all claims stated in the following two (2) cases:

1. *Christopher C. Metts v. Continental Airlines, Inc. et al.,* Case No. 88-F-1991

2. *Kelly Englehart, et al. v. Continental Airlines, Inc. et al.,* Case No. 88-F-1994

IT IS FURTHER ORDERED that Defendants' Motions for Summary Judgment filed in *Metts,* Case No. 88-F-1991, and *Englehart,* Case No. 88-F-1994 on April 4, 1989, are DENIED AS MOOT.

APPENDIX

ORDER MDL 751-39
MEMORANDUM OPINION AND ORDER ON POST-TRIAL MOTIONS FOR SUMMARY JUDGMENT AND DISMISSAL

*Order MDL 751-12* [720 F.Supp. 1433]

Memorandum Opinion and Order on Motion to Vacate or Modify Order MDL 751-10, Setting Settlement Conferences, slip op. (D.Colo. Oct. 14, 1988)

*Order MDL 751-13* [720 F.Supp. 1442]

Memorandum Opinion and Order on Motion to Compel Discovery Against Experts, slip op. (D.Colo. Oct. 26, 1988)

*Order MDL 751-16* [720 F.Supp. 1445]

Memorandum Opinion and Order on State Law Controlling Issues of Punitive Damages, slip op. (D.Colo. Nov. 15, 1988)

*Order MDL 751-17* [720 F.Supp. 1455]

Memorandum Opinion and Order on Transfer, Consolidation and Trial Procedure, slip op. (D.Colo. Nov. 29, 1988)

*Order MDL 751-18* [720 F.Supp. 1455, 1462]

Memorandum Opinion and Order on Motion to Correct and Clarify Order MDL 751-16, slip op. (D.Colo. Dec. 2, 1988)

*Order MDL 751-19*

Memorandum Opinion and Order on Motion to Certify Order MDL 751-16 for Appeal, slip op. (D.Colo. Dec. 2, 1988)

*Order MDL 751-24*

Memorandum Opinion and Order on Motions for Summary Judgment and Dismissal, slip op. (D.Colo. Dec. 23, 1988) (punitive damages, deceptive trade practices, regulatory preemption, due process and choice of law)

*Order MDL 751-28* [720 F.Supp. 1465]

Memorandum Opinion and Order on Motion to Strike Designation of Municipal Non-Party At Fault, slip op. (D.Colo. Jan. 9, 1989) (constitutional challenge to comparative fault designation of immune non-parties)

*Order MDL 751-33* [720 F.Supp. 1467]

Memorandum Opinion and Order on Post-Trial Motions, slip op. (D.Colo. March 10, 1989)

*Order MDL 751–38* [720 F.Supp. 1493]
Memorandum Opinion on Evidence Orders,
slip op. (D.Colo. June 7, 1989)

### ORDER MDL 751–40 ON AMENDED JUDGMENT AND PREJUDGMENT INTEREST

This multidistrict litigation involves claims for personal injury and wrongful death arising out of the November 15, 1987 crash of Continental Airlines Flight 1713 in Denver, Colorado. Consolidated liability claims of all plaintiffs were presented through trial of the compensatory damage claims of Karen Svea Johnson, a passenger injured in the crash, and Robert Cooke, Jr., her husband. Defendants in this litigation are Continental Airlines, Inc., and Texas Air Corporation.[1] Judgment was entered in the *Johnson* case on February 7, 1989 on verdicts returned at the close of a three-week trial to a jury.

In Order MDL 751–33, the court denied plaintiffs' motions for new trial or judgment notwithstanding the verdict. *See In re Air Crash Disaster at Stapleton International Airport,* Order MDL 751–33, 720 F.Supp. 1467 (D.Colo. Mar. 10, 1989). Objections as to form of judgment entered in *Johnson* were stayed pending additional briefing on choice of law issues regarding prejudgment interest applicable to all plaintiffs. In this order we find judgment should be amended to reflect the following: (1) choice of law principles entitle all plaintiffs in this multidistrict litigation to prejudgment interest on claims for common law tort at a rate established by Colorado law, (2) the amount of payments advanced to plaintiff Karen Johnson set-off against the damage award should be reduced to reflect only amounts proven at trial as damages, and (3) recitation of the verdict on punitive damages should be amended to reflect the language of Special Interrogatories returned by the jury.

### I. PREJUDGMENT INTEREST

 Pursuant to prior orders of the court and agreement of the parties, the substantive law of three jurisdictions applies to this litigation. *See* Order MDL 751–16, 720 F.Supp. 1445 (D.Colo. Nov. 15, 1988) (comprehensive order on choice of law); Order MDL 751–33, at 1472 (D.Colo. March 10, 1989) (order on post-trial motions). The court held that Texas law applies to issues of punitive damages and deceptive trade practices because Texas has the most significant interest in regulating corporate conduct which is the focus of those claims. By agreement of the parties, Colorado law applies to issues of liability for negligence for the reason that no true conflict of law exists; further, the claims arose in Denver, Colorado. Also by agreement of the parties, issues of compensatory damages are to be resolved under the law of each plaintiff's domicile, for the reason that the domicile state has the most significant interest in placing a value on the injuries suffered.

The majority of plaintiffs in this litigation, including exemplar plaintiffs Karen Svea Johnson and Robert Cooke, Jr., specifically prayed for prejudgment interest in their complaints. Prior to the exemplar trial on Karen Johnson's claims for compensatory damages, defendants made no motion to strike the demand for prejudgment interest from any complaint. Judgment was entered in *Johnson* on February 7, 1989. Judgment states plaintiffs shall recover damages "together with prejudgment interest at the rate established by applicable Idaho law ..." In post-trial motions filed February 15, 1989, plaintiffs sought to amend judgment to refer to the Idaho Code section establishing the appropriate rate of interest. Defendant Continental Airlines responded that plaintiffs in *Johnson* were not entitled to recover prejudgment interest under Idaho law, which bars recovery of prejudgment interest in personal injury tort cases. *See Reynolds v. American Hardware Mutual Ins. Co.,* 115 Idaho 362, 367, 766 P.2d 1243, 1248 (1988). In reply, plaintiffs asserted that

---

**1.** The court dismissed claims against Texas Air Corporation during trial.

judgment reflected appropriate application of Colorado choice of law principles, that they were entitled to prejudgment interest under the applicable Colorado law, and that establishment of a rate of interest pursuant to Idaho law was consistent with the prior course of the litigation.

Resolution of the issue was stayed and the parties were directed to file simultaneous briefs on the choice of law principles applicable to *Johnson* and all other cases pending in this multidistrict litigation.

Defendant's primary position is that plaintiffs' failure to articulate the prejudgment interest choice of law question in the Pretrial Order amounts to waiver of their right to litigate the issue. *See R.L. Clark Drilling Contractors v. Schramm, Inc.,* 835 F.2d 1306, 1307–08 (10th Cir.1987) (conflict of law issue on right to attorneys fees waived where not specifically mentioned in Pretrial Order establishing Oklahoma law as law of the case). We agree that procedural waiver is dispositive of the issue. The court finds, however, that defendants have waived the right to litigate the applicability of foreign law over the law of Colorado on the issue of prejudgment interest.

In the Pretrial Order entered for all cases on September 1, 1988, plaintiffs and defendant articulated their positions on the choice of law issues raised by complaints in the multidistrict litigation. Defendant's position at that time and during the course of litigation on choice of law issues was that all liability issues should be resolved under Colorado law while issues of compensatory damages should be resolved under the law of a victims domicile. Both sides favored the approach ultimately adopted by the court that conflicts of law questions were to be resolved on an issue-by-issue basis, resulting in the application of the law of various jurisdictions to each complaint. *See* Order MDL 751–16, 720 F.Supp. 1445, 1448 n. 3 (D.Colo. Nov. 15, 1988) (discussing issue-based choice of law analysis known as "decepage.").

Defendant contends that the prior conduct of this litigation allowed court and defense counsel to rely on the assumption that prejudgment interest was an element of compensatory damages controlled by the law of a plaintiff's domicile.[2] We disagree.

Several factors place the burden of litigating prejudgment interest choice of law on defendant in this litigation. *First,* we previously held that the choice of law rules applicable to this litigation require that the law of the place of injury should control *unless* some other state has a more significant relationship to the parties or occurrence. *See* Order MDL 751–16, at 1452. Thus, unless a party moves the court to apply the law of a different jurisdiction, the law of Colorado governs plaintiffs' claims for injuries suffered in Colorado. *Second,* we are of the view that a district court may apply the law of the jurisdiction in which it sits unless a party preferring the application of foreign law raises the issue. The judgment entered in *Johnson* comports with this implicit practice. *See R.L. Clark Drilling Contractors v. Schramm, Inc.,* 835 F.2d 1306, 1307–08 (10th Cir.1987). And *third,* throughout the course of this litigation, defendant has been careful to hold Idaho plaintiffs to the letter of Idaho law applicable to their claims. *See* Order MDL 751–16, at 1454 (denying motion to dismiss or strike claims for punitive damages from complaints filed in Idaho as improperly plead under Idaho Code § 6–1604).

Defendant bore the burden of informing the court, prior to the entry of judgment in the exemplar trial, that it believed Idaho law barred Idaho plaintiffs' claims for pre-

---

**2.** Application of defendant's theory to all cases would result in a partial award of prejudgment interest to plaintiffs residing in Arizona, *see Lake Havasu Community Hospital, Inc. v. Arizona Title Ins. & Trust Co.,* 141 Ariz. 363, 377–78, 687 P.2d 371, 385–86 (1984), and New Jersey, *see* N.J. Court Rule 4:42–11. Prejudgment interest on the full amount of damages would be afforded to plaintiffs residing in Utah, *see*

*Gleave v. Denver & Rio Grande Western R.,* 749 P.2d 660, 672 (Utah App.), *cert. denied,* 765 P.2d 1278 (Utah 1988), and Colorado, *see* Colo.Rev. Stat. § 13–21–101. No prejudgment interest could be recovered by plaintiffs residing in Idaho, *see Reynolds v. American Hardware Mutual Ins. Co.,* 115 Idaho 362, 367, 766 P.2d 1243, 1248 (1988), or Washington, *see Hansen v. Rothaus,* 107 Wash.2d 468, 730 P.2d 662 (1986).

judgment interest. *R.L. Clark Drilling,* 835 F.2d at 1307–08. On motion of defendant, these cases were transferred to a district court unfamiliar with the particularities of Idaho law. At no time did defendants seek to strike claims for prejudgment interest from the complaints of Idaho plaintiffs. Rather than indicating that the parties conceded prejudgment interest was an element of compensatory damages, defendant's litigation strategy demonstrates that the complaints as tried reflect the applicable law by demanding prejudgment interest. Accordingly, defendant has waived objection to demands for prejudgment interest. Plaintiffs are entitled to prejudgment interest under applicable Colorado law. *See* Colo.Rev.Stat. § 13–21–101.

Furthermore, we find no manifest injustice in this result because relevant choice of law rules would also lead to the application of Colorado law as the law of the forum and place of injury. *See R.L. Clark Drilling Contractors v. Schramm, Inc.,* 835 F.2d 1306, 1308 (10th Cir.1987).

■■■ Conflicts of law analysis in this litigation requires application of the choice of law rules of the transferor forums—Colorado, New Jersey and Idaho. *Casto v. Arkansas–Louisiana Gas Co.,* 562 F.2d 622, 625 (10th Cir.1977); Order MDL 751–16, 720 F.Supp. 1445, 1448 (D.Colo. Nov. 15, 1988). Colorado courts apply a black letter rule that the law of the forum state applies to issue of prejudgment interest. *Prospero Assoc. v. Redactron Corp.,* 682 P.2d 1193, 1196 (Colo.App.1983); *see also Davis Cattle Co. v. Great Western Sugar Co.,* 393 F.Supp. 1165, 1182 (D.Colo.1975), *aff'd,* 544 F.2d 436 (10th Cir.1976), *cert. denied,* 429 U.S. 1094, 97 S.Ct. 1109, 51 L.Ed.2d 541 (1977); *WestAmerica Mortgage Co. v. First Nationwide Bank,* Civ. A. No. 86–A–1091, slip op. (D.Colo. July 15, 1988) (available on WESTLAW, 1988 WL 76377) (rule remains in force despite Colorado shift to

most significant relationship test on choice of law issues). New Jersey courts hold that the right to prejudgment interest is determined by the law of the state whose law determined liability. *Entron, Inc. v. Affiliated FM, Ins. Co.,* 749 F.2d 127, 131 (2d Cir.1984); *Polglase v. Greyhound Lines, Inc.,* 401 F.Supp. 335, 337 (D.Md. 1975). Although we can locate no Idaho case addressing the issue, the majority rule requires application of the law of the place of the tort to control plaintiff's right to prejudgment interest. *See Kisco Co. v. Verson Allsteel Press Co.,* 738 F.2d 290, 296 (8th Cir.1984); *Fremont National Bank v. Collateral Control Corp.,* 724 F.2d 1410, 1415 (8th Cir.1983); *Bott v. American Hydrocarbon Corp.,* 458 F.2d 229, 231 (5th Cir.1972).

■■■ The characterization of prejudgment interest as an element of compensatory damages, contained in the comments to the Restatement section generally applied by courts in each of these jurisdictions, does not persuade us that the aforementioned rules are no longer in effect. *See Rose Hall, Ltd. v. Chase Manhattan Overseas Banking,* 566 F.Supp. 1558, 1574–75 (D.Del.1983); Rest. (Second) Conflict of Laws § 171, comment C.

Applying these rules and the choice of law principles articulated in Order MDL 751–16, we find Colorado has the most significant relationship and interest in determining whether tortious conduct within Colorado, resulting in litigation in Colorado courts, gives rise to a right to prejudgment interest on claims for common law tort.[3] The strong Colorado interest in encouraging pretrial settlement of such cases outweighs the interests of states whose laws merely measure the value of injuries suffered by residents injured outside their borders. *Cf. Stemple v. Phillips Petroleum Co.,* 430 F.2d 178, 182–83 (10th Cir.1970) (policy of Colorado prejudgment interest rule not violated where injuries to foreign plaintiff arise in foreign jurisdiction).

---

**3.** It is important to note that the focus of this analysis is on common law tort theories of liability. The conduct to which such liability attaches is distinguishable from the purely corporate conduct on which the court's analysis focused in Order MDL–751–16, on choice of law principles applicable to claims for punitive damages. The right to prejudgment interest under the Texas Deceptive Trade Practices Act is not before the court. We do not decide whether plaintiffs who may ultimately prove and elect recovery under that statute would be entitled to prejudgment interest.

Although some courts have commented on the apparent unfairness of allowing parties to pick and choose applicable state law in multi-jurisdictional tort cases, this result is a necessary by-product of the principled approach to choice of law questions applied in such cases. *Compare In re Air Crash Disaster Near Chicago, Illinois*, 644 F.2d 594, 611 & nn. 13–15 (7th Cir.), *cert. denied sub nom.*, 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 187 (1981); Rest. (Second) Conflict of Law § 145; *with Vasina v. Grumman Corp.*, 644 F.2d 112, 119 (2d Cir.1981); *McPeters v. Sky's West Parachute Center, Inc.*, Civ. A. No. 81–C–1756, slip op. at 2 (D.Colo. April 30, 1985); *see also* Order MDL 751–16, 720 F.Supp. 1445, 1454–55 (D.Colo. Nov. 15, 1988) (discussing need for federal statute to control tort liability in air crash disasters to avoid burden of choice of law litigation).

Judgment as entered in *Karen Svea Johnson, et al. v. Continental Airlines, Inc.*, Civ. A. No. 88–F–664, correctly reflects plaintiffs' right to prejudgment interest. The rate of interest should also be determined under the applicable Colorado law. Accordingly, judgment will be amend-ed to reflect the appropriate rate of interest afforded under Colorado law.

We find further that choice of law principles entitle all plaintiffs in this multidistrict litigation, litigated in the District of Colorado, arising out of the crash of an aircraft at Denver, Colorado, to prejudgment interest on claims for common law tort at a rate of interest established under Colorado law.

## II. SET–OFF

Judgment was entered in the *Johnson* case, with approval of the court, on a then unopposed motion of defendant to deduct certain sums advanced to plaintiffs from the damage amount awarded. *See* Idaho Code § 41–1840. Plaintiffs objection to the amount calculated by defendant was received subsequent to the entry of judgment. Plaintiffs' objections were renewed in post-trial motions and stayed pending entry of this order.

The court has reviewed the damage sums presented to the jury in Plaintiffs' Exhibits 462 and 463. The following sums were not proven at trial and thus were improperly deducted from the amount awarded on entry of judgment:

| Amount | Date of Payment[4] | Recipient |
| --- | --- | --- |
| $4,721.00 | December 30, 1987 | Air Ambulance America |
| $ 465.00 | January 4, 1988 | Reed Ambulances, Inc. |
| $ 234.00 | January 12, 1988 | Anesthesia Assoc. of Boise |
| $ 40.00 | January 15, 1989 | University Physicians |
| $2,452.00 | January 26, 1988 | University Physicians |
| $7,912.00 | Total | |

Generally, moneys advanced for travel to examinations conducted by defendant's medical experts do not fall within the statute. Nonetheless, the statute is designed to afford defendant a set-off for amounts proven at trial as damages which are not in fact out-of-pocket losses suffered by plaintiff. An amount of $540.44 for travel to defendant's medical expert was proven at trial as damages. *See* Plaintiffs' Exhibit 463. That amount was properly deducted from plaintiff Karen Johnson's damage award upon entry of judgment.

Judgment shall be amended to reflect an additional $7,912.00 in damages improperly deducted from the amount the jury awarded to plaintiff Karen Svea Johnson. Plaintiff shall recover damages awarded less $45,976.65.

## III. EXTRANEOUS LANGUAGE

Plaintiffs object to the form of the recitation of the jury's finding on punitive damages. The phrase "actual conscious indifference amounting to" shall be stricken from pages 2 and 4 of the judgment to

4. Dates listed are those stated in defendant's motion for set-off.

comport with the Special Verdicts returned by the jury on consolidated claims for punitive damages.

### ORDER

IT IS HEREBY ORDERED that plaintiffs' motion to modify judgment in *Karen Svea Johnson, et al. v. Continental Airlines, Inc.*, Civ. A. No. 88–F–664, is GRANTED IN PART; the Clerk of the Court is directed to enter Amended Judgment in accordance with the terms of this Order:

(1) Plaintiffs are entitled to recover damages together with prejudgment interest at the rate established by applicable Colorado law;

(2) Defendant Continental Airlines, Inc. has satisfied a portion of the judgment to be entered in the amount of $45,976.65;

(3) Plaintiff Karen Svea Johnson shall recover from defendant Continental Airlines, Inc. $779,000.00 less $45,976.65;

(4) The phrase "actual conscious indifference amounting to" shall be stricken from pages 2 and 4 of the judgment; where appropriate, judgment, shall read "Defendant Continental Airlines, Inc., did not engage in gross negligence as defined in the Court's instructions of law ...";

IT IS FURTHER ORDERED that plaintiffs in this multidistrict litigation shall receive prejudgment interest on claims for common law tort at a rate established by applicable Colorado law.

### ORDER MDL 751–45

### ORDER ON MOTIONS TO RECONSIDER ORDERS MDL 751–39 AND 751–40

This matter comes before the court on motions of plaintiffs and defendants to reconsider issues decided against them in Or-

ders MDL 751–39 and MDL 751–40, entered June 7, 1989.[1]

The history of this multidistrict litigation is fully set forth in those orders. In this order we grant defendants' request to bind tag-a-long cases in this litigation to the pretrial and discovery rulings of this court. All other motions are denied in all other respects.

### I.

### MOTION TO STRIKE OR CLARIFY TEXAS DECEPTIVE TRADE PRACTICE ACT CLAIMS

In a Motion to Strike or Clarify portions of Order MDL 751–39 regarding claims under the Texas Deceptive Trade Practices Act ("DTPA"), filed June 19, 1989, defendant Continental Airlines, Inc. seeks to strike certain language regarding deceptive trade practice claims in from Order MDL 751–39. Defendant also moves for an order establishing that upon remand, consolidated plaintiffs must prove deceptive trade practice, a common issue resolved at the exemplar trial, as well as individual issues of producing cause and injury.

Defendants contend that in Order MDL 751–39 the court improperly speculated on which of several advertisements presented at trial served as the basis for its finding that Continental Airlines engaged in deceptive trade practices. We need not discuss the legal standards applicable to our review of the evidence, because no such speculation was involved.[2] In Order MDL 751–39, we held that a finding of deception rests on a comparison of defendant's actual systems and practices with the systems and practices as advertised. *See* Order MDL 751–39, at p. 1516. Defendant represents that the advertisements presented at trial discussed (1) pilot training (2) safety and maintenance, and (3) on-time record. Defendants

---

**1.** The motions are: (1) Defendants' Amended Motion to Clarify, Reconsider or Amend Order MDL 751–39 as to unconsolidated cases, filed June 22, 1989; (2) Defendant Continental Airlines' Motion to Strike or Clarify Order MDL 751–39 on issues of deceptive trade practices, filed June 22, 1989; (3) Defendant Continental Airline's Motion to Amend and Reconsider Order MDL 751–40 on issues of prejudgment inter-

est, filed June 16, 1989; and (4) Plaintiffs' Motion to Reconsider and Amend Order MDL 751–39 as to consolidated cases, filed July 6, 1989.

**2.** The legal authority cited in support of defendants' proposition is wholly inapplicable to the matters at hand. *See, e.g., Haywood v. Ball*, 634 F.2d 740, 743 (4th Cir.1980) (discussing "issues decided" standard of collateral estoppel).

cite no evidence in the record on which the jury could have based its comparison of advertised claims of on-time performance with Continental's actual record.[3]

As to severance and consolidation, we have considered and reject defendant's contention that each plaintiff must prove deception, producing cause, and injury upon remand. Plaintiffs concede that evidence of the advertising campaigns on which their claims are based is necessary to prove causation. The burden will remain on plaintiffs to show that those practices caused the injuries alleged, pursuant to the standards applicable under the DTPA. Defendant's Motion to Strike or Clarify is DENIED.

## II.

## MOTIONS TO RECONSIDER AND AMEND PLAINTIFFS BOUND BY THE EXEMPLAR TRIAL

In their Amended Motion to Reconsider and Amend Order MDL 751–39, filed June 22, 1989, defendants Continental Airlines, Inc. and Texas Air Corporation seek reversal of our ruling that principles of collateral estoppel do not bind all unconsolidated cases to the verdicts of the exemplar trial. In a combined Response and Motion to Reconsider and Amend that order, filed July 6, 1989, plaintiffs move the court to vacate our rulings that (1) consolidated plaintiffs are bound to those verdicts and (2) collateral estoppel similarly binds plaintiffs Harkenrider and Vermeulen.

We have carefully considered the contentions of counsel, the authorities cited, and our analysis in Order MDL 751–39. The parties present no persuasive authority contradicting our analysis.

As held in several authorities discussed in Order MDL 751–39, a judge presiding over multidistrict litigation makes every effort to address the interests of justice and efficiency *within the limits* of its jurisdiction and established legal principles. The statute and orders of the Judicial Panel on Multidistrict Litigation do not confer authority upon a multidistrict court to create broad new powers, inconsistent with established legal principles.[4] Beginning with a motion filed just prior to commencement of the exemplar trial, defendants sought an order from this court that all cases filed or to be filed would be bound to the verdicts of the exemplar trial. As we found in Order MDL 751–39, such an order would be clearly beyond the powers of this court. Defendants' "Motion for Clarification of Consolidation," filed January 6, 1989, can only be viewed as a strategic attempt to seek a general ruling, and not as a formal motion for consolidation of specific unconsolidated cases within our jurisdiction on that date.

Defendants also contend that the doctrine of virtual representation, a corollary of the doctrine of collateral estoppel, binds unconsolidated plaintiffs to the results on the exemplar trial. Defendants refer the court to several cases discussing the doctrine. Each case recognizes specific prerequisites to applying the doctrine to prevent non-parties from litigating issues decided against their interests in a prior trial. In Order MDL 751–39, we discussed these prerequisites and found them inapplicable

---

3. In Order MDL 751–39 and prior orders related to the DTPA, we found that the statute as currently drafted does provide an alternative remedy for plaintiffs pursuing claims for personal injuries in circumstances like those at issue in this litigation. We note that this analysis is confirmed by amendments to the DTPA now before the Texas State Legislature which would greatly reduce the circumstances in which the remedy would be available as an alternative to traditional tort remedies. *See* Symposium, *Consumer Protection and the Texas Deceptive Trade Practices Act,* 20 St. Mary's L.Rev. 495–736 (1989) (statute summarized and published in symposium materials of March 10, 1989 available through Editorial Board).

4. Our analysis of the limited authority of federal courts to bind unconsolidated mass tort claimants to the results of a consolidated trial is confirmed by a draft federal statute recently proposed to the American Bar Association by its Commission on Mass Torts. The proposal addresses many of the issues court and counsel have confronted throughout the course of this litigation. Not even the draft recommendation, however, would go as far as defendants request, binding all claimants for a mass tort to the verdicts of one trial. *See* Am.Bar Assoc. Comm'n on Mass Torts, *Report and Recommendations* (June 1989).

to plaintiffs in this litigation. *Compare Martin v. Wilks,* —— U.S. ——, —— -—— n. 2, 109 S.Ct. 2180, 2184 n. 2, 104 L.Ed.2d 835, 844–45 n. 2 (1989), *with* Order MDL 751–39, at 1525 (both discussing prerequisites of privity and actual control).

Defendants also seek reconsideration of that portion of Order MDL 751–39 granting voluntary dismissal of the claims of crew members plaintiffs. We have considered and reject defendants' contentions.

Consolidated plaintiffs seek reversal of that portion of Order MDL 751–39 overruling their objections to summary judgment on common claims and issues resolved at the exemplar trial. Plaintiffs objections are thoroughly addressed in that order.

Motions of plaintiffs and defendants to reconsider or amend Order MDL 751–39 regarding the effect of the exemplar trial on cases pending in this multidistrict litigation are DENIED.

### III.

### MOTION TO AMEND AND RECONSIDER PREJUDGMENT INTEREST

Defendant's Motion to Amend and Reconsider, filed June 16, 1989, seeks reconsideration of Order MDL 751–40 (D.Colo. June 7, 1989). In that order the court held that Colorado pre-judgment interest law would apply in these multidistrict cases. Defendant Continental Airlines, Inc. seeks (1) reversal of our determination that Defendants have waived the right to litigate the choice of law issue, and (2) reconsideration of our choice of law determination.

Defendant represents that it could not have waived its right to litigate the issue because the court was advised of defendants positions through confidential submissions in early 1988. While confidential submissions to the court did not place plaintiffs on notice of Continental's position on the issue, we will not hold defendants to strict construction of waiver doctrine. Neither will hold plaintiffs to the similarly strict standard of waiver proposed by de-

fendants, however. Order MDL 751–40 holds in the alternative that choice of law principles require application of Colorado law on the issue of prejudgment interest. We are not persuaded that we need revise that ruling.

■ In support of the motion, defendant presents recent authority from the Idaho Supreme Court which establishes a choice of law rule on the issue. *See* Order MDL 751–40, at p. 1530 (noting absence of Idaho authority on point). Idaho has rejected the law of the forum rule applied in Colorado. *See Draper v. Draper,* 115 Idaho 973, 772 P.2d 180 (1989). Thus the issue presents a complete conflict in regard to (1) the applicable choice of law rule, (2) the jurisdiction to which those rules would look for substantive law on prejudgment interest, and (3) whether plaintiffs are entitled to prejudgment interest pursuant to that substantive law. *See* Order MDL 751–40, at p. 1529 n. 2 (discussing prejudgment interest laws of interested jurisdictions). When such a complete conflict arises, the interests of the state of injury remain the most significant. *In re Air Crash Disaster Near Chicago, Illinois,* 644 F.2d 594, 616 (7th Cir.1981). Accordingly, recent authority from the Idaho Supreme Court does not alter our analysis in MDL 751–40. Colorado, the state of injury and the forum state, has the most significant interest in issues of prejudgment interest.[5] Continental's Motion to Amend and Reconsider Order MDL 751–40 is DENIED.

### IV.

### MOTION TO CLARIFY PRETRIAL STATUS OF UNCONSOLIDATED CASES

■ As to defendants' motion to clarify the status of discovery in cases not consolidated for trial included in the motion to amend, filed June 11, 1989, the motion is GRANTED. Commensurate with the prior orders of this court on discovery and pretrial rulings, "tag-a-long" cases recently transferred to this court by the Judicial Panel on Multidistrict Litigation are subject to the ongoing pretrial rulings of this court. Consolidated pretrial proceedings in

---

5. We are unpersuaded that application of Colorado prejudgment interest law will insurmountably complicate litigation of Idaho cases on

remand for determination of compensatory damages.

these cases have been completed through the efforts of the Plaintiffs Steering Committee. Plaintiffs request that discovery be re-opened to allow counsel to probe more deeply on common liability issues based on the lessons of that first trial. Such ongoing discovery practices would run contrary to the policies of the Multidistrict Litigation Statute, 28 U.S.C. § 1407. *See In re Yarn Processing Litigation,* 472 F.Supp. 174, 177 (S.D.Fla.1979). At the status conference set for July 25, 1989 in Boise, Idaho, the court will evaluate the status of damage discovery and other alternatives for proceeding toward the efficient resolution of those cases.

## V.

## CORRECTIONS

We recognize certain typographical errors in Orders MDL 751–39 and 40. Those corrections are set forth below.

## ORDER

IT IS HEREBY ORDERED that Defendants' Motion to Clarify Order MDL 751–39 filed June 22, 1989 is GRANTED; all cases not consolidated for trial are bound by the pretrial discovery orders and rulings of law pursuant to Order MDL 751–1, slip op. at p. 8 (April 18, 1988); it is further

ORDERED that Defendants' Motion to Bind Unconsolidated cases to the Exemplar Trial Liability Determinations, filed June 22, 1989, is DENIED; it is further

ORDERED that Defendant's Motion to Strike or Clarify those parts of Order MDL 751–39 concerning Texas Deceptive Trade Practices Act, filed June 16, 1989 is DENIED; it is further

ORDERED that Defendants' Motion to Amend and Reconsider Order MDL 751–40 filed June 16, 1989, is DENIED; it is further

ORDERED that Plaintiffs' Motion to Reconsider and Amend Order MDL 751–39, filed July 6, 1989, is DENIED.

[The corrections called for in this portion of the opinion have been made in the appropriate sections.]